1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   A.A., et al.,                          No.  2:13-cv-01167-KJM-EFB

12              Plaintiffs,

13        v.                                ORDER

14

15   JONATHAN RAYMOND, in his personal
     and official capacity as Superintendent of the
16   Sacramento City Unified School District,

17              Defendant.

18

19              Before the court is defendant's motion to dismiss four of plaintiffs' five claims

20   challenging defendant's closure of elementary schools.  (ECF 38.)  The court decided this

21   motion without a hearing.  For the reasons below, the court GRANTS defendant's motion.

22   I.       ALLEGED FACTS AND PROCEDURAL HISTORY

23              This case arises from the decision on February 21, 2013, of the Sacramento City

24   Unified School District ("District") to close seven elementary schools:  C.B. Wire, Collis P.

25   Huntington, Fruit Ridge, Joseph Bonnheim, Maple, Mark Hopkins and Washington.  According

26   to the District, the decision to close the schools was based on declining school enrollment

27   combined with the District's budget problems.  The District asserts it selected schools for

28   closure using an objective measurement of each school's "efficiency," determined by dividing

1

the current number of students by the amount of "teachable space" in the facility.  Although eighteen schools were considered at one point or another for closure based on this criterion, only the seven schools ultimately were closed.  The other schools were removed from consideration at various times in the decision-making process at the recommendation of defendant Raymond, who is sued in his individual and official capacities.[1]

Plaintiffs allege that the District's decision-making process resulted in the closure of schools with high populations of minority students, and in neighborhoods with high concentrations of minority residents, and will have adverse impacts on students with disabilities.  They allege that the standards used to measure school efficiency were flawed, that the District deviated from established procedures, and that the closure timeline was intentionally rushed in order to prevent parents from effectively opposing the closures.  Furthermore, they allege that schools in white neighborhoods and schools with higher proportions of white students were spared from closure for various pretextual reasons.  Plaintiffs seek to halt the closure process, while the District alleges it has completed much of the work to close the schools in preparation for Fall classes.

Plaintiffs Ant. and Ang. R. B., who attended Joseph Bonnheim, are multi-ethnic, of Latino, Native American, and White heritage.  (Romero Decl., ECF 17-28 ¶¶ 1–2.)  Plaintiffs D.S., A.A. and D.A., who are Mexican-American, also attended Joseph Bonnheim.  (Aleman Decl., ECF 17-19 ¶ 1; Arriaga Decl., ECF 17-21 ¶¶ 1–2.)

D.A. has Attention Deficit Disorder ("ADD") and his mother has worked with the staff at Joseph Bonnheim to develop a comprehensive plan to keep him on track.  (ECF 17-21 ¶ 3.)

/////

---

[1] Although plaintiffs allege that people and entities distinct from defendant Raymond committed many of the acts that violated their rights, no party contends that necessary parties are absent from this suit or that defendant Raymond is incapable of granting the relief plaintiffs request in their complaint.  Accordingly, the court adopts the parties' conventions for identifying the various actors in this case while noting there is only one named defendant.

Plaintiff C.S., who is Caucasian, attended Washington Elementary; he has Autism Spectrum Sensory Challenges, Attention Deficit Hypertension Disorder ("ADHD") and possibly Tourette's syndrome.  (Salazar Decl., ECF 17-29 ¶¶ 2, 5.)  He has an Individualized Education Program ("IEP") and has been assisted by the same Resource Specialist Program ("RSP") Teacher for the past two years.  (*Id.* ¶ 5.)

Plaintiff J.M, who is Mexican-American, attended Maple Elementary.  (Virgen Decl., ECF 17-30 ¶ 1.)  She is in a special education class and has an IEP.  (*Id.* ¶ 2.)

Plaintiff Chao Chang, who is Hmong and does not speak English, avers that she has a nine year old son who attended C.B. Wire Elementary.  (Chang Decl., ECF 17-25 ¶ 1.)  This child is not identified as a plaintiff.

Plaintiff J.G. attended Mark Hopkins.  (Gentle Decl., ECF 17-26 ¶¶ 1–2.)

Plaintiff E.C. attended C.B. Wire, as did his older siblings and other members of his family.  (Camargo Decl., ECF 17-23 ¶¶ 2–3.)

Plaintiffs C.G. and V.M., who are Mexican-American, attended C.B. Wire.  (Casillas Decl., ECF 17-24 ¶¶ 1–2.)

Plaintiffs filed their original complaint on June 11, 2013 (ECF 1), moving at the same time for a preliminary injunction to enjoin the closure of the seven elementary schools (ECF 17).  Plaintiffs filed a first amended complaint ("FAC") on June 20, 2013, alleging the following claims: (1) violation of the Equal Protection Clause of the Fourteenth Amendment asserted under 42 U.S.C. § 1983; (2) violation of equal protection and anti-discrimination provisions of the California constitution; (3) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; (4) violation of the Procedural Due Process Clause of the Fourteenth Amendment asserted under 42 U.S.C. § 1983; and (5) violation of due process under the California constitution.  (ECF 36.)

On June 26, 2013, defendant filed the instant motion to dismiss, seeking to dismiss claims two through five.  (ECF 38.)  On July 3, 2013, the parties filed a joint status report indicating, *inter alia*, that they would file a stipulation in which plaintiffs would voluntarily dismiss their second claim for violation of equal protection and anti-discrimination

under the California constitution and their fifth claim for violation of due process under the California constitution.  (ECF 72.)  The parties still have not filed this stipulation.  However, in their opposition to the present motion, plaintiffs voluntarily dismiss these two state law claims. Accordingly, the court does not consider them in this order.

On July 22, 2013, this court denied plaintiffs' motion for a preliminary injunction.  (ECF 77.)  In defendant's opposition to that motion, he incorporated by reference his arguments from the instant motion.  (ECF 42 at 11.)  Therefore, the court has already considered and addressed, in its order denying the preliminary injunction, defendant's arguments in support of his motion to dismiss plaintiffs' third and fourth claims under the ADA and the Due Process Clause.  However, the court did not consider plaintiffs' July 22, 2013 opposition to the motion to dismiss (ECF 78) nor defendant's reply filed on July 26 (ECF 79).

Because plaintiffs' opposition to the instant motion does not alter the court's conclusion on the disposition of plaintiffs' third and fourth claims, the court now grants defendant' motion to dismiss as explained below.

II.      LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will

4

survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court's consideration of documents either attached to a complaint or incorporated by reference, or of matters of judicial notice, will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

III.     ANALYSIS

The court addresses defendant's arguments to dismiss plaintiffs' third claim under the ADA and fourth claim under the Due Process Clause in turn.

A.     Americans with Disabilities Act

In their third claim, plaintiffs assert the school closures discriminate against disabled children in violation of the ADA, 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). (ECF 17-1 at 12.) They allege three named plaintiffs in this action have qualifying disabilities, in that the ADA defines "disability" to include a "record of such impairment." 42 U.S.C. § 12102(2). (*Id.*) Plaintiff D.A. has been diagnosed with ADD. (ECF 17-21 ¶ 3.) Plaintiff J.M. has been diagnosed as emotionally disturbed. (ECF

////

5

17-30 ¶ 2.)  Plaintiff C.S. has been diagnosed with autism, ADHD, and dyslexia.  (ECF 17-29 ¶ 2.)

Plaintiffs contend the school closures discriminate against these three plaintiffs because their new schools will not provide the special education programs they enjoyed at their old schools.  (ECF 17-1 at 12.)  Plaintiff D.A.'s educational program took six months for school staff, his doctors, and his mother to develop.  (*Id.*)  The District has stated it will not provide transportation for after-school programs, "many of which specifically benefit D.A.'s disability."  (*Id.* (citing ECF 17-21 ¶ 4).)  Plaintiff J.M.'s mother has also spent many months developing J.M.'s IEP with her teacher.  (*Id.*)  The District has indicated not all programs available at current schools will be available at reassigned schools and that it will not provide transportation for after-school programs.  (*Id.* at 13 (citing ECF 17-30 ¶ 5).)  J.M.'s family will be forced to pay for public transportation so she can receive the benefit of her special education programs.  (*Id.*)  Plaintiff C.S.'s assigned RSP teacher will not transition with him to his new school.  (*Id.* (citing ECF 17-29 ¶ 5).)

Plaintiffs argue disparate impact claims are cognizable under the ADA.  (*Id.* (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)).)  Liability for disparate treatment hinges upon whether the protected trait motivated the defendant to treat disabled individuals less favorably than those who are not disabled.  (*Id.* (citing *Raytheon*, 540 U.S. at 53).)  Plaintiffs assert defendant specifically targeted the disabled by using the efficiency criterion, which singles out schools that had constructed extra space to accommodate special education programs.  (*Id.*)  In reality, plaintiffs contend, defendant is double-counting this extra space to reach the desired conclusion that a particular school is underutilized.  (*Id.*)

Defendant argues plaintiffs' ADA claim should be dismissed because plaintiffs did not exhaust administrative remedies available under the Individuals with Disabilities Education Act ("IDEA"), and because not all plaintiffs make out a *prima facie* case of discrimination.  (ECF 40 at 11.)  Defendant contends plaintiffs J.M. and C.S. are required to exhaust the IDEA's administrative remedies because they seek relief that is also available under the IDEA:  namely, they seek an injunction to modify their educational placements.  (*Id.*

6

at 11-13 (citing *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 875 (9th Cir. 2011)).)  Defendant

also asserts plaintiffs do not state a *prima facie* case for discrimination under the ADA because

they do not demonstrate they are being denied "meaningful access" to state-provided services.

(*Id.* at 15 (citing *Alexander v. Choate*, 469 U.S. 287, 302 (1985)).)

      Plaintiffs argue they are not required to exhaust administrative remedies because

these remedies are inadequate and seeking them would be futile.  (ECF 78 at 3–8.)  The

IDEA's "stay put" provisions, for example, are not available in the instant case and therefore

plaintiffs cannot be required to exhaust IDEA remedies before seeking similar relief under the

IDEA.  (*Id.* at 7.)  A well-established exception to IDEA exhaustion requirements exists,

plaintiffs contend, when an administrative law judge lacks the authority to grant adequate

relief.  (*Id.* at 3–4 (citing *Christopher v. Stanislaus Cnty. Office of Educ.*, 384 F.3d 1205, 1211

(9th Cir. 2004)).)  Plaintiffs contend that individualized relief is not possible in the instant case

because their harm is caused by a single policy decision that will "interrupt the programs of

hundreds of children with disabilities . . . ."  (*Id.* at 4–5 (citing *Morgan Hill Concerned Parents

Association v. California Department of Education*, No. 2:11-cv-2471-KJM-AC, 2013 WL

1326301 (E.D. Cal. Mar. 29. 2013)).)  Moreover, individualized administrative relief would not

benefit all the affected children.  (*Id.* at 7.)  Finally, plaintiffs' alleged harm would already have

occurred before they could receive an administrative decision, which typically takes months.

(*Id.* at 6.)

      Plaintiffs also contend they have sufficiently pled denial of meaningful access to

special education programs.  (*Id.* at 8–9.)

      1.    Exhaustion

      Under the Ninth Circuit's relief-centered approach, a plaintiff is required to

exhaust IDEA's administrative remedies, even when bringing claims under other statutes like

the ADA, when he seeks any remedy that is available under the IDEA.  *Payne*, 653 F.3d at 875.

In sum, exhaustion is required in three circumstances: (1) when the plaintiff seeks an IDEA

remedy or its equivalent; (2) when the plaintiff seeks prospective injunctive relief to alter an

IEP or the educational placement of a disabled student; and (3) when the plaintiff is alleging

denial of a free appropriate public education ("FAPE").  *Id.*  If a plaintiff is required to exhaust administrative remedies but does not do so, federal courts do not have jurisdiction to entertain that plaintiff's unexhausted claims.  *Id.* at 867 (quotations and citation omitted).

Given the state of the law, plaintiffs J.M. and C.S. are required to exhaust administrative remedies.  In their complaint and their declarations, these plaintiffs state that as a result of defendant's discrimination, they will be denied the benefits of the programs currently prescribed in their IEPs.  As noted, J.M. asserts the District has indicated not all programs available at current schools will be available at reassigned schools and the District will not provide transportation for after-school programs.  (*Id.* at 13 (citing ECF 17-30 ¶ 5).)  J.M. also alleges her family will be forced to pay for public transportation so she can receive the benefit of her special education programs.  (*Id.*)  Plaintiff C.S. alleges his RSP teacher will not transition with him to his new school.  (*Id.* (citing ECF 17-29 ¶ 5).)  In effect, these two plaintiffs seek to stop the District from modifying their current IEPs.  This injunctive relief is a remedy available under the IDEA.  *Payne*, 653 F.3d at 875.

The fact that the IDEA's "stay put" provisions are not available to plaintiffs does not alter the court's analysis.  These provisions, contained in 20 U.S.C. § 1415(j), are an administrative remedy requiring the district "to maintain the disabled student's current educational placement while the judicial proceeding is ongoing to determine if the new placement is appropriate."  *N.D. v. Hawaii Dep't of Ed.*, 600 F.3d 1104, 1111 (9th Cir. 2010).  This case in fact is similar to *N.D. v. Hawaii,* in which the plaintiffs asserted public school furloughs and Friday closures violated the IDEA.  600 F.3d at 1116–17.  The plaintiffs filed suit in federal court because they believed the state had violated the IDEA's "stay put" provisions by not maintaining the students' educational programs while a plaintiff's IDEA administrative action was pending, exactly as those programs were before the furloughs.  *Id.* at 1110.  The court, in holding that the "stay put" provisions were not available to the plaintiffs based upon the nature of their claims, construed the plaintiffs' allegations that the state changed their education placements as claims that the state was materially failing to implement students' IEPs.  *Id.* at 1117.  The court concluded that "stay put" provisions are available only when a

8

1    student's educational placement is modified, such as when the student is being moved from

2    regular class to home instruction.  *Id.* at 1116.  The court further concluded that allegations that

3    the state, as a result of the changes incident to the furloughs and Friday closures, was materially

4    failing to implement portions of students' IEPs are redressable through the IDEA's

5    administrative due process mechanisms.  *Id.*  The court noted additionally that disabled

6    children were not singled out for furlough days, and that permitting the "stay put" provision to

7    apply in that instance effectively would give the parents of disabled children veto power over a

8    state's decisions regarding the management of its schools.  *Id.*

9           In the instant case, plaintiffs' contentions that the school closures will result in

10    modifications to their educational programs or IEPs, similar to the allegations of the plaintiffs

11    in *N.D.*, amount to claims that the District is materially failing to implement their IEPs.  *Id.*  As

12    the Ninth Circuit held in *N.D.*, these are claims that are redressable under the IDEA's

13    administrative due process mechanisms.  *Id.*  Accordingly, unless an exception applies,

14    plaintiffs J.M. and C.S. are first required to pursue administrative remedies.

15           Plaintiffs' contentions that administrative relief would be inadequate and futile

16    are meritless.  In *Morgan Hill*, 2013 WL 1326301, at *9, the plaintiffs alleged the California

17    Department of Education, not a particular district or school, systematically was not fulfilling its

18    statutory obligations under the IDEA.  The plaintiffs also alleged the IDEA administrative

19    process itself was broken.  *Id.*  As such, this court held that administrative relief under the

20    IDEA would be inadequate and seeking it would be futile.  *Id.*  In the instant case, while

21    plaintiffs assert a single policy is responsible for their injuries, they have alleged particular

22    injuries that are redressable within the IDEA administrative framework.  Whether J.M.'s and

23    C.S.'s programs at their new schools are inadequate under the IDEA is a fact-specific inquiry

24    for which the IDEA provides viable individualized administrative remedies.

25           Plaintiffs' final argument that the precipitous school closures have left plaintiffs

26    no time to pursue administrative remedies also is untenable.  Every student claiming a district is

27    violating his or her IEP could argue that the damage will have been done by the time an

28    administrative determination is made.  As discussed above, the IDEA's "stay put" provisions,

fashioned to address time-sensitive circumstances, are inapplicable; accordingly, plaintiffs' first recourse is to bring an administrative action, after which they can seek judicial review. *N.D.*, 600 F.3d at 1117.

Because plaintiffs J.M and C.S. do not allege they have sought administrative relief, this court lacks jurisdiction over their ADA claims and will not consider their allegations in determining whether plaintiffs have stated a *prima facie* case for discrimination under the ADA.

2.       Prima Facie Case

A plaintiff bringing a disparate impact claim under the ADA must show he or she was denied "meaningful access" to state-provided services. *Hunsaker*, 149 F.3d at 1043. In her declaration, D.A.'s mother states that D.A.'s teachers, doctors, and other staff have implemented a comprehensive plan in school and at home that has worked for him.  (ECF 17-21 ¶ 3.)  Disruptions in this program will trigger inappropriate responses in his behavior, and it is unclear whether D.A.'s teachers will transition with him.  (*Id.* ¶ 4.)  Further, D.A.'s mother states that the transition to a new school will cause additional hardship because, as a working single mother, she is "unable to take [him] to school at 9 a.m. due to [her] job schedule."  (*Id.* ¶ 7.)

Assuming without deciding that plaintiff D.A. is an ADA beneficiary, the court finds plaintiffs have not established a *prima facie* case of discrimination under the ADA. While the court is sympathetic to D.A's circumstances, D.A.'s mother's declarations do not demonstrate D.A. will be denied meaningful access to an education or to special education programs.  *Cf. Smith v. Henderson*, No. CIV.A. 13-420 JEB, 2013 WL 2099804, at *13 (D.D.C. May 15, 2013) ("One could imagine the first step to a viable ADA claim here if, for example, the closing schools offered services or programs that the new schools do not.  Yet Plaintiffs here do not make any such allegation because it appears that they will continue to receive the same benefits in the new schools.").  Plaintiffs do not allege D.A. will be denied an education or an opportunity to benefit from his comprehensive plan that has worked well for
/////

10

1    him.  While the transition to a new school may be difficult, this fact does not amount to a denial

2    of meaningful access to special education programs.

3            Plaintiffs' third cause of action is dismissed with leave to amend, if possible

4    consonant with Federal Rule of Civil Procedure 11.

5        B.    Procedural Due Process

6            Plaintiffs' fourth claim alleges a violation of procedural due process under the

7    Fourteenth Amendment.  Plaintiffs allege that defendant's "inadequate or deficient notice,

8    procedures, and discriminatory decision-making" violated, and will continue to violate, their

9    federal due process rights.  (ECF 36 ¶ 66.)  In their reply, plaintiffs state that their protectable

10   interest is their "right to a publicly-funded equal educational opportunity."  (ECF 78 at 10.)

11           Defendant argues plaintiffs cannot prevail on the merits of their due process

12   claim because plaintiffs have not based the claim on a cognizable interest, whether liberty or

13   property.  (ECF 40 at 17.)  Defendant contends that plaintiffs' purported fundamental federal

14   interests in Equal Protection and non-discrimination based upon disability, and under California

15   law in the right to a publicly-funded equal educational opportunity, are insufficient to support

16   plaintiffs' procedural due process claim.  (*Id.*)  Defendant asserts that an exhaustive search for

17   authority yields no support for plaintiffs' position that these identified interests are protected

18   liberty or property interests for the purposes of procedural due process.  (*Id.*)

19           "[T]he Due Process Clause provides that certain substantive rights — life,

20   liberty, and property — cannot be deprived except pursuant to constitutionally adequate

21   procedures."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  A claim for a

22   procedural Due Process violation has two distinct elements: the deprivation of a

23   constitutionally protected liberty or property interest and denial of adequate procedural

24   protection.  *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d

25   963, 970 (9th Cir. 2010) (citing *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,

26   149 F.3d 971, 982 (9th Cir. 1998)).  Plaintiffs must first establish a property or liberty interest

27   deserving of constitutional protection before a court addresses whether adequate process was

28   denied.  *See Loudermill*, 470 U.S. at 541 ("Respondents' federal constitutional claim depends

on their having had a property right in continued employment."); *Brewster*, 149 F.3d at 983 ("[O]nce a court determines that a protected property interest has been taken, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972))); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013) ("For [defendant] to be entitled to due process we first must find that he has a liberty interest triggering procedural protections.").

Liberty interests can arise from either the Due Process Clause or state law. *Chappell*, 706 F.3d at 1062; *Mendoza v. Blodgett*, 960 F.2d 1425, 1428 (9th Cir. 1992) ("A state creates a protected liberty interest when it places substantive limitations on official discretion."). A liberty interest is created when a state's regulation of officials' decision-making procedures contains "explicitly mandatory language" that direct specific outcomes if standardized criteria are met. *Mendoza*, 960 F.2d at 1429 (quoting *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463 (1989)).

Here, plaintiffs' asserted fundamental liberty interests in equal protection, non-discrimination based upon disability, and equal education opportunities do not satisfy the first element of a procedural due process claim. First, plaintiffs' interest in equal protection is already properly before this court as plaintiffs' first cause of action, which defendant has not challenged in his motion to dismiss. Plaintiffs' attempt to base their due process claim on their equal protection claim does not make sense: plaintiffs' right to equal protection, whether under the California or federal constitutions, may not be infringed so long as due process was provided. If the school closures infringe plaintiffs' equal protection rights then it is irrelevant how extensive or generous the due process the District provided before the closures. None of plaintiffs' cited cases, nor any located by the court, suggest otherwise. Accordingly, the court does not consider plaintiffs' equal protection arguments as a basis for their due process claim.

Second, the court has determined above that plaintiffs have not stated a claim of discrimination based upon disability. Even if plaintiffs did state an ADA discrimination claim, the court similarly finds that no amount of due process would justify the deprivation of that interest in such non-discrimination. Plaintiffs cannot base their due process claim on this theory either.

Third, plaintiffs provide no authority for their argument that their interest in equal education opportunity creates a liberty interest protectable under the due process clause. The California Education Code does not create a protected liberty interest entitling plaintiffs to certain procedures when school officials decide to shutter schools.  California Education Code § 17388 provides only that a district may appoint a 7-11 Committee when considering the use or disposition of school buildings.[2]  It does not include "explicitly mandatory language" that requires the appointment of an advisory committee, nor are district officials required to follow a committee's recommendations.  *Mendoza*, 960 F.2d at 1428.

Even if plaintiffs asserted their interests in equal education opportunity as a constitutionally protected property interest, they are not deprived of their interest in equal education opportunity because the District is providing them with a substantially similar education at other school sites.  "[T]ransfer to another school does not itself constitute a deprivation of education — instead, there must be a showing that the alternative school is significantly inferior."  *Lindsey v. Matayoshi*, No. CIV. 11-00713 JMS, 2013 WL 3092450, at *9 (D. Haw. June 19, 2013) (quoting *Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 394 (5th Cir. 2011) for the proposition that "'a student who is removed from her regular public school, but is given access to an alternative education program, has not been denied her entitlement to public education.'"); *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1359 (6th Cir. 1996) (a student "may not have procedural due process rights to notice and an opportunity to be heard when the sanction imposed is attendance at an alternative school absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school"); *Zamora v. Pomeroy*, 639 F.2d 662, 669–70 (10th Cir. 1981) (no due process violation absent a showing that the alternate

---

[2]  Section 17388 reads: "The governing board of any school district may, and the governing board of each school district, prior to the sale, lease, or rental of any excess real property, except rentals not exceeding 30 days, shall, appoint a district advisory committee to advise the governing board in the development of districtwide policies and procedures governing the use or disposition of school buildings or space in school buildings which is not needed for school purposes."

13

1  school was so significantly inferior that it amounted to expulsion from the educational system).

2  While plaintiffs allege they will not receive identical educational opportunities at their new

3  schools and in some instances will not be provided transportation, they do not provide evidence

4  showing the new receiving schools are significantly inferior.

5          Because plaintiffs have not pled a protected interest, the court does not reach the

6  question whether defendant adhered to constitutionally adequate procedures, the second

7  element of a procedural due process claim. Plaintiffs' fourth cause of action is dismissed, also

8  with leave to amend.

9  VI.    CONCLUSION

10          For the reasons discussed above, the court GRANTS defendant's motion to

11  dismiss.  Plaintiffs must file an amended complaint consonant with this order within twenty-

12  one days.

13          IT IS SO ORDERED.

14  DATED:  September 5, 2013.

_____
UNITED STATES DISTRICT JUDGE